Staples, J.,
delivered the opinion of the court.
A preliminary question in this case to be settled, is, whether the circuit court erred in refusing to remove the case to the circuit court of the United States for the western district of Virginia. The defendant, the Baltimore and Ohio Railroad Company, is a corporation chartered by the state of Maryland. It is also, and was when this suit was brought, the lessee of a railroad from Strasburg to Harrisonburg, in this state, belonging to the Virginia Midland railroad company, a Virginia corporation, and was controlling ancl operating said railroad under said lease, as owner and proprietor, at the time of the injuries committed, as set forth in the declaration.
*The defendant has not produced the lease nor given evidence of its contents. We are, therefore, not informed as to the precise terms and conditions upon which the lease was granted. All that we know is, that the defendant is operating the road as owner and exercising the powers and privileges granted its lessee by the charter of incorporation. What, then, is the status in Virginia of the defendant, a Maryland corporation, with reference to this road?
The cases generally agree that a corporation created by the laws of one state can have no legal existence outside of the limits of that state. It may, however, make contracts, transact business, and even exercise corporate functions in another state with the consent of the latter, express or *489 implied. In the Baltimore and Ohio R. R. Co. v. Gallahue’s adm’r, 12 Gratt. 655, this court decided that under the statutes authorizing that company to construct its road across the territory of Virginia, the Baltimore and Ohio Railroad Company, as to such road, was to be regarded as a Virginia corporation.
In Railroad Company v. Harris, 12 Wall. U. S. R. 65, the supreme court of the United States decided that the Baltimore and Ohio Railroad Company having under an act of Congress constructed a lateral branch of its road in the District of Columbia, was by reason thereof liable to suit in that district as if it had been an independent corporation of that locality.
The court did not rest its decision upon the ground, however, that the act of congress had made the Baltimore and Ohio Railroad Company a corporation of the district, but upon the ground that the act operated as a license to the company to construct its road there; and having accepted the license, the company had placed itself in the position of a domestic corporation for all the purposes at least of being sued in that locality. The *court say they could see no reason why one state may not make a corporation of another state, as there organized and conducted, a corporation of its own, quo ad hoc any property within its territorial limits.
See also Maryland v. Northern Central R. R. Co., 18 Mary. R. 193; Sprague v. Hartford, Prov. & Fishk. R. R. Co., 5 R. I. 233; Goshen v. Supervisors, 1 West Va. 308; The Penn. R. R. Co. v. Sly, 65 Penn. St. R. 205; Pomeroy v. New York & New Haven R. R. Co., 4 Blatchf. R. 122. The Baltimore and Ohio Railroad Company, as a corporation of Maryland, can of course, have no legal existence outside of that state, but as the lessee of a Virginia railroad company, exercising all the functions and powers of the latter, it may be subject to all its duties and obligations. This must necessarily be so, upon the authority of the cases cited, if that company is acting under any license granted by the state of Virginia. Under such circumstances, so acting, it must be treated as a Virginia corporation quo ad hoc the line of railroad under its control, so far at least as its liability to our own citizens is concerned. It can only escape these consequences by showing that it is exercising corporate powers here without permission of the state, and consequently that it is a tort feasor or trespasser. Whether the company obtained the lease under any statute or provision in the charter of Virginia roads does not appear — none was shown to the court and none was claimed in the argument. It may be a very grave question whether a corporation of this state can be permited to convey its franchises to a foreign corporation, so as to enable the latter to exercise corporate rights and powers here without some such authority. The purposes of this case do not require a decision of this question.
If the Baltimore and Ohio Railroad Company is controlling and operating the Valley road without permission *of the state, it certainly cannot therefore claim exemptions and immunities to which it could not be entitled if it had obtained such permission. The company derives all its powers and privileges from the charter of the company which owns the road; it must be subject to all the duties imposed on that company, and among these is the obligation to answer in our own courts to our own citizens for any damage resulting from its conduct.
If under authority of law or on principles of comity a foreign corporation is allowed to hold property an'd exercise corporate functions in this state, it must also submit to the jurisdiction of our courts in controversies with our citizens. If it claims the privileges and immunities of a domestic corporation, it must also perform the duties and answer to all the liabilities of a Virginia corporation.
It is estopped by its conduct — by its exercise of corporate functions here under a Virginia charter — to deny that it is a Virginia corporation for all the purposes of Virginia jurisdiction.
The learned counsel for the defendant referred to the case of Baltimore & Ohio R. R. Co. v. Casey, decided by the supreme court of. Ohio, 28 Ohio Stat. R. 218, in which a somewhat different view is taken from that which is here presented. It will be seen that the decision in that case is, in a great measure, based upon the statute of Ohio, not in force here. The court was not unanimous, and we think the dissenting opinion contains the more satisfactory doctrine upon this question. We are, therefore, of opinion that the circuit court did not err in refusing to remove the case to the circuit court of the United States.
The next error assigned is in the action of the court overruling the demurrer to the declaration.
*It is contended that in an action under our statute, by the personal representative of the person killed, it is necessary to aver in the declaration for whose benefit the suit is prosecuted — whether the family of the deceased or for his creditors — that otherwise it will be impossible for the defendant to come prepared to meet all the issues arising on the trial. The first, second and third sections of the act of 1872, incorporated in the Revised Code of 1873, ch. 145, p. 996, comprise all the enactments in our laws upon this subject. We think it is very clear that the framers of these enactments had before them at the time, the English and New York statutes on the same subject, from which the statutes of the different states, of a similar character, are generally taken. It will be perceived that our legislature has omitted some of the provision of those statutes and materially changed the phraseology of others. Thus the English statute requires the plaintiff to file with his declaration a full *490 particular of the person or persons in whose behalf the action is brought. Our statutes contain no such provision, and the very fact that it is omitted, while other provisions of the English statutes are adopted, would seem to indicate a deliberate purpose on the part of the legislature to-dispense with any such statement.
The first section of our statute and the first section of the English and New York statutes, respectively, are almost identically the same. All of them declare tha,t when the death is caused by the wrongful act or neglect of any person or corporation, and the wrongful act or neglect be such, if death had not ensued, as would entitle the party injured to recover damages, then the person or corporation shall be liable in an action for damages, notwithstanding the death of the person injured, to be brought by and in the name of the personal representative. The New York statutes provide that the action shall be for *the exclusive benefit of the widow and next of kin of the deceased. The Virginia statutes does not declare for whose benefit the action is brought, or that it is for the benefit of any one. It authorizes the jury to award such damages as to it may seem fair and just, and to direct in what proportions they shall be distributed to the wife, husband, parent or child — the amount recovered to be paid to the parties just named, as the case may. be, in such proportions as the jury shall have directed, or if they have not directed, according to the statute of distributions; but if there be no husband or wife, parent or child, the amount recovered shall be assets in the hands cf the personal representative to be disposed of according to law.
In the cases under the New York statutes and in tíre cases under the statutes of Indiana, Missouri and Illinois, which are taken from those of New York, it has been held that tire declaration must aver there is a widow and next of kin. But these decisions are uniformily placed upon the ground that the damages are not assets of the estate, but belong exclusively to the widow and next of kin. As the action cannot be entertained unless there be a widow and next of kin, their existence must be averred in the declaration and proved on the trial. Safford v. Drew, 3 Duer. R. 627; Chicago and Rock Isl. R. R. Co. v. Morris, 26 Illi. R. 400; Woodward v. The Chic. and Mich. West. R. R. Co., 23 Wisc. R. 400; The Ind. and Pittsbg. and Chic. R. R. Co. v. Keely, adm’r, 23 Ind. R. 133.
These cases proceed upon the obvious ground that whenever damages are limited to a class, the declaration must show there Is such a class, otherwise the foundation of the action fails.
Under the Virginia statute the damages, It is true, are given first to the husband or wife, parent or child, but if *neither of these is alive, the action then may be maintained and the damages will be assets to be disposed of according to law. In this respect the Virginia statute differs from that of all the other states. As with us the damages are not for the exclusive benefit of the family of the deceased, it would seem not to be essential that the declaration shall allege that there is a family or that the action is prosecuted for their benefit. It is very true the fact that the deceased left a widow and children dependent upon him for support, will, as a general rule, very materially affect the amount of the recovery. There is, however, no rule of law which compels a party to state in his declaration every matter which may enhance the damages. In an action of trespass for breaking and entering the plaintiff’s house, he may give in evidence without specially stating it, under the general allegation of alia enormia, the debauching of his daughter, or the battery of his servants, and with us it is not even necessary to make the allegation of alia enormia. Code of 1860, § 12, ch. 171.
If the declaration ought to state that the deceased left a fani'ly for whose benefit the suit is prosecuted, it should go further and state the condition and circumstances of the individual members of the family. And if there is no family, it should state whether there are other relatives of the deceased, their circumstances and condition; also the number and claims of creditors, the age, the mental and physical powers and capacity of the deceased, his avocation and value to his family. All these bear directly upon the question of damages, and all may be the subject of investigation by the jury. Can any good reason be given for not stating them in the declaration, if it be necessary to apprise the defendant of any matter which may materially affect the amount of recovery?
*The statute was designed to give to the personal representative a right of action wherever the deceased would have had it had he lived. The declaration must, therefore, always state such facts as will show a good cause of action on the part of. the deceased himself. And this would seem to be the only test prescribed by .the statute. The defendant knows that the damages are primarily for the benefit of the family, for so the law declares, and he can very rarely be surprised by the evidence upon this point. The manner in which the damages are to be distributed is no concern of the defendant, and not under the control of the plaintiff. It is a question for the jury exclusively, not involved in the issue. It is very probable that, no serious inconvenience would result from requiring the plaintiff to state for whose benefit the action is brought, but such an averment is not essential to the action. If we require it to be made merely because it has a natural bearing upon the question of damages, it will be difficult to assign a limit to allegations of that character. In simplifying all the proceedings and pleadings, we best promote the object of the statute. We are, therefore, of opinion that the demurrer to the declaration was pioperly overruled.
*491 The defendant’s second and third bills of exception were taken to the ruling of the court in admitting certain testimony introduced by the plaintiff. The defendant’s objection to this testimony is based upon the ground, that as the declaration did not aver that the suit is for the benefit of the family of the deceased, the plaintiff ought not to be permitted to prove any fact relating to their condition or circumstances by way of affecting the amount of damages to be recovered. This objection was considered and disposed of in discussing the demurrer to the declaration. As it is unnecessary to aver that the action is for the benefit of the family, the testimony is ♦admissible without such averment. If the declaration did not give the defendant sufficient information upon this point it might have been obtained by calling on the plaintiff to file with his declaration the bill of particulars provided for in our statute.
The defendant’s fourth and fifth bills of exception set out the evidence offered by plaintiff, to show the business qualifications of the deceased, the value of his services to his family, the condition of his health, and the amount he was realizing annually from the employment in which he was engaged, as also the value of his services in attending to the business of his family.
As all the questions arising upon the admission of this evidence are also fully presented by the instructions given by the court to the jury, it will save time and induce to a clear understanding of the subject to consider the instructions in connection with the evidence. Before doing so it may be. proper to advert very briefly to some well established principles of law governing in this class of cases.
Under the English and American statutes the courts have generally held that the damages must be assessed with reference to the pecuniary loss resulting from the death of the person injured, and that neither the physical pain of the deceased, nor the mental sufferings of the surviving family can be taken into the estimate. Shearman & Red on Neg., sec. 610; Eield on the Law of Damages, and cases cited, sec. 630. Whether the same construction must be given to our statute may not be so clear. The question does not arise in this case, and no opinion is given or even formed on the subject. The plaintiff’s instructions concede that the damages are to be fixed with respect to the pecuniary loss sustained by the family of the deceased. The defendant certainly cannot complain of this form of stating the proposition. All *the cases agree that where the deceased has left a widow and children it is proper for the jury, in assessing the damages, to estimate the value of the support and maintenance properly derived from the deceased, the amount realized by him from his usual occupation, as also the loss of his care, nurture and instruction.
Some of the cases have gone much farther in holding that the jury may take into the estimate the loss of the family in reference to the parent’s moral and intellectual training, upon the ground that such training, if judicially administered, would operate favorably upon the pecuniary interests of the children. Tilley v. Hudson River R. R. Co., 29 N. York R. 252. The instructions given by the court in this case carefully avoid all controverted points of this character. The propositions they affirm are such as have received the sanction of nearly all the courts. They inform the jury that in ascertaining the damages they shall assess the same with reference to the pecuniary loss sustained by the wife and children of the deceased:
h'irst. By fixing the same at such sum as would be equal to the probable earnings of the deceased, taking into consideration the age, business capacity, experience and habits, health, energy, and perseverance of the deceased during what .would probably have been his lifetime if he had not been killed.
Second. By adding these to the value of his services in the superintendence, attention to and care of his family and the education of his children, of which they have been deprived by his death. As was very properly said in Tilley v. Hudson River R. R. Co., 39 New York R. 353: “All these are elements of pecuniary success—component parts of that pecuniary capital, of the continued exercise and employment of which the children *were entitled to the benefits, and of which the wrongful act of the defendants deprived them.”
The statute is regarded by the courts as remedial in its character — as affording compensation for injuries unknown to the common law — and is to be liberally construed to promote the objects the legislature manifestly had in view. And, therefore it is, the courts look to the relationship and dependent condition of the parties, the capacity and ability of the deceased, mental and physical, and, indeed, all the surrounding circumstances and situation of the family to enable the jury properly to estimate the loss sustained and to fix the measure of the damages. The evidence offered by the plaintiff in this connection, and upon which the instructions were based, was properly received; and the instructions correctly stated the law for the guidance of the jury. The cases bearing upon this subject may be found in Shearman & Red on Negligence, sec. 606 to 613; Redf. on Carriers and Bailees, 395 to 304; and in Field on the Law of Damages, page 490, chap. 21, where the statutes of the different states on this subject are given.
The court, at the request of the plaintiff, .also gave the jury five other instructions, to which the defendant excepted. They are as follows:
T. When injury or damage happens t.o a passenger by the breaking down or overturning of a railroad train, or the breaking down of a bridge, or wheel, or axle, or by any other accident occurring on the road, the presumption, prima facie, is, that it *492 occurred by the negligence of the railroad company, and the burden of proof is on the company to establish that there has been no negligence whatsoever, and that the damage has been occasioned- by inevitable casualty, or by some cause which human care and foresight could not prevent.
*11. The law, in tenderness to human . life and limbs, holds railroad, companies liable for the slightest negligence, and compels them to repel, by satisfactory proofs, every imputation of such negligence.
When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. Any negligence or default in such case will make such carriers liable in damages under the statute.
III. The Baltimore arid Ohio Railroad Company, as a common carrier of passengers, was bound to exercise the utmost degree of diligence and care in safely transporting William A. Wightman upon his journey.
IV. The slightest neglect against which human prudence and foresight might have guarded, and by reason of which his death may have been occasioned, renders such company liable in damages for such death.
V. Said railroad company is held by the law to the utmost care, not only_ in the management of its trains and cars, but also in the structure, repair and care of the track and bridges, and all other arrangements necessary to the safety of passengers.
We do not deem it necessary to enter into' any discussion of the proposition of law involved in these instructions. It is sufficient to say that they are fully sustained by the elementary writers and by the opinions of the most respectable courts in this country. The decisions on this subject are given in Wharton on Negligence, '§ 621 to' 661, inclusive; also, § 422 and the notes to these sections; Redfield on Carriers and Bailees, § 346, Farish & Co. v. Reigle, 11 Gratt. 697.
The defendant’s sixth bill of exceptions is to the refusal of the court to receive the evidence offered by the defendant to show that the deceased, at the time of *his death, held policies of insurance on his life to the amount of $5,000 for the benefit of his wife and children, and that since h-is .death the amount called for by said policies had been collected and paid over to the widow and children. We think the court did not err in refusing to admit this evidence. It was clearly calculated to mislead the jury as to the issues they were to try. The mere fact that the family of the deceased received money from some other source would not justly influence the measure of compensation to be made by the defendant for injuries attributable to the misconduct of its employees and agents. The party effecting the insurance paid the full value for it, and there is no equity in the claim of the defendant to the benefit of a contract for which it gave no consideration.
It is said that Rord Campbell, the author of the English act, was of opinion that the money received on a policy of insurance by the family of the deceased, might be taken into account in assessing the damages. In this country the courts have uniformily held the contrary; and this view is the more just and reasonable. Althorpe v. Wolfe, 22 New York R. 355; Harding v. Town of Townshend, 43 Verm. R. 536; Pittsburg and Cin. R. R. Co. v. Thompson, 56 Illi. R. 138. See also the English case of Bradburn v. Great W. R. R. Co., R. R. 10 Exch. R. 1; Yates v. Whyte, 4 Bing. N. C. 272, 5 Scott 644.
The only remaining point to be considered was the refusal of the court to continue the case for the defendant. This point ought more properly to have been considered in the beginning, but it is taken in the order in which it is presented by the record, as set forth in the eighth bill of exceptions. The application for a continuance was upon the ground of the absence of a material witness. This witness, although in the service of the defendant, was a resident-of the state of Maryland. No *effort was ever made to take his deposition, although the case was pending on the docket for a considerable time. The witness was never summoned, the defendant relying upon his promise to attend the trial, tie left the service of the company, and ceased to be subject to its orders, nearly ten days before the commencement of the trial. This fact alone ought to have satisfied the defendant not to rely upon the promise of the witness, but to take the necessary steps to procure his attendance or his deposition. There was an additional reason for the exercise of diligence. This case, with others against the same defendant, had been arranged as early as February, 1877, for trial in April following, and the judge of an adjoining circuit requested to preside. Under all these circumstances, we think the court very properly overruled the motion for a continuance. A motion of this kind is addressed to the sound discretion of the court under all the circumstances of the case, and this court will not reverse the action of the court below in such case, unless such action was plainly erroneous. Hewitt’s case, 17 Gratt. 627.
Upon the whole, we are of opinion the judgment of the circuit court should be affirmed.
Judgment affirmed.